Mr. Justice Buti/ek
delivered the opinion of the court.
The chancellor who pronounced the circuit decree, being in full possession of the whole ease-, has decided all the questions fairly involved in it. His decision leads to the conclusion that complainants bill should be dismissed, and we eoncur in this conclusion. Whilst it was proper for him to decide on all the grounds tafeen below, it is not necessary for this court to take more than will sustain his decree.
The grounds on which we rest our decision, are j — •
1st. There was not sufficient testimony to satisfy the chancellor that the deed, which purports to have been executed by Baltus inab-init, was ever duly delivered by him for the purposes expressed in it; or that Christian Inabinit took the negroes under the deed, and held them subject to its limitations and control.
And 2d. The parties who were interested in claiming under the deed, after Christian’s death, haying deliberately and upon a full knowledge of their rights, agreed not to assert their claims — they shall not now be permitted to do so, after the negroes have been sold to bona fide purchasers, for valuable consideration, in satisfaction of the debts contracted by Christian Inabinit, on the faith of them.
As it regards the first ground, it is perhaps sufficient to say, that the chancellor who heard the testimony was more capable of judging of its force and sufficiency, than we can be, whe must look at it as it is represented, and not as it was developed during the trial. It is certain, from the testimony of the only subscribing witness that was examined, that the deed .was not delivered in fiact, at the time it purports to have been executed. Baltus Inabinit kept it in his possession — in his exclusive possession —during his life-time. He may have intended to reserve to himself a control over the deed, and the property conveyed by it. But it might be inferred that a delivery had been made, sufficient to give the deed its legal operation, if it had been proved that Christian took under it, or acknowledged its existence in the life-time of his father. But such a conclusion does not seem to be authorized. At least, th@ judge below did not think so. He says, “ It appears further by the evidence, that Baltus Inabinit had put his son Christian in possession of this property before the execution of the deed, and that he held the same as his own. So that the father had no right to exercise any control over those slaves, and to make a new gift with limitations. And it seems clear that Christian did not claim or hold under the deed, if he knew of its existence, for he treated the slaves as his own absolute property, and mortgaged them to secure the payment of his own debts.” From the explanation made in the argument, it is probable *15 that the son had part of the slaves only in his possession, before the deed was executed. The others that went into his possession after-wards, were regarded by him as the first were, as his own absolute property ; and as there is no evidence that he knew of, or assented to the deed before his father’s death, it is fair to conclude that he held the negroes by a title independent of the deed. But, as 1 before ob. served, it was a question of evidence ; and the judgment passed upon it, by the circuit chancellor, is entirely satisfactory to this court: — He having a better opportunity to decide rightly than we have.
We feel fortified in the second ground, by the consideration, that the slaves were sold to satisfy the debts of Christian Inabinit, contracted, no doubt, on the faith of their being his absolute property. This of itself would not be enough to deprive the parties of their rights under the deed, if they were clearly expressed, and definitely secured by its provisions and legal requisites. But the deed is exceedingly obscure, and of doubtful import. So much so, that it would be diffi. cult for any court to pronounce a satisfactory judgment on its legal construction. The complainants believing, or supposing that they had a legal claim under the deed, submitted it to intelligent counsel for direction and advice. This was at the time the negroes were about being sold. Their counsel took time, by agreement with the representatives of creditors, to investigate the question presented. The complainants were informed that their claim could not be sustained. This was not the hasty conclusion of inexperienced advisers. The complainants, on such advice, agreed to abandon their claim ; and by their "Consent or acquiescence, the property was sold, and bought by purchasers for valuable consideration. Would it be right to set aside these sales, made under such circumstances 1 To do so, would be to sanction, if not an intentional, a practical fraud on the purchasers. By the conduct and consent of the complainants, the purchasers acquired their title. The law will not disturb their title now, by offending the obvious justice which the whole case suggests.
If the deed under which the parties claim, has no legal existence for the want of delivery, or if it has lost its legal operation, by the conduct of those interested in it, then the complainants must fail in their application for redress.
Whether Mr. Smith’s testimony was properly rejected, as well as some other questions in the case, may only be adverted to, to say that we do not deem it necessary to pass any judgment on them.
It is ordered and decreed, that complainant’s motion be refused, and that their bill be dismissed, with costs.
A. P. BUTLER.
Smith, Attorney General, for the motion.
Memminger, contra.
Filed 20th May, 1836.
We concur,
B. J. EARLE.
WM. HARPER,
J. S. RICHARDSON,
JNQ. B. O’NEALL,
JOSIAH J. EVANS,
J. JOHNSTON.